IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TERESA R. BEAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:14CV32 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Teresa Bean brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff filed her applications for Disability Insurance Benefits and Supplemental Security Income on June 14, 2010 and June 21, 2010, respectively, alleging a disability onset date of January 1, 2010. (Tr. at 204-15.)[1] Her applications were denied initially and upon reconsideration. (Tr. at 62-121.) Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 156-57.) Following the subsequent hearing

---

[1] Transcript citations refer to the Sealed Administrative Transcript of Record [Doc. #s 6-13].

on March 1, 2012 (Tr. at 32-60), the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act (Tr. at 14-31). On November 21, 2013, the Appeals Council denied review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-7).

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of

2

the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, sacroilitis, chronic obstructive pulmonary disorder ("COPD"), depression, right toe cyanosis, bilateral knee osteoarthritis, bilateral chrondromalacia of the patella, asthma, and chronic headaches. (Tr. at 16.) The ALJ found at step three that these impairments did not meet or equal a disability listing. (Tr. at 17.) Therefore, he assessed Plaintiff's RFC and determined that she could perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that she:

> could lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; could sit for at least six hours and stand or walk for two hours, but only stand and walk for short distances or short time frames; could push or pull occasionally with the bilateral lower extremities; could not climb ladders, ropes or scaffolds, but could occasionally perform other postural activities; must avoid a concentrated exposure to hazards or pulmonary irritants; is

5

limited to simple repetitive tasks and unskilled work, defined as routine with little, if any, change; requires a work setting that involves only occasional interpersonal contact; needs a stretch break at 30 minute intervals while seated.

(Tr. at 19.) At step four of the analysis, the ALJ found that Plaintiff's past relevant work exceeded her RFC. (Tr. at 23.) However, based on the testimony of a vocational expert, the ALJ concluded at step five that Plaintiff could perform other jobs that exist in significant numbers in the national economy and therefore was not disabled. (Tr. at 23-24.)

Plaintiff now challenges the ALJ's decision in three respects. Specifically, she alleges that the ALJ (1) failed to properly evaluate her knee impairment under 20 C.F.R. Part 404, Subpt. P, Appendix I, § 1.03 (hereinafter "Listing 1.03"), (2) failed to properly weigh the February 15, 2011 medical source opinion of Dr. Randall Mercier, and (3) improperly assessed Plaintiff's credibility.[4] Plaintiff further contends that the second and third alleged errors resulted in an erroneous RFC assessment. The Commissioner, in turn, urges that substantial evidence supports the ALJ's decision.

A. Listing 1.03

Plaintiff first contends that the ALJ erred at step three of the sequential analysis, by failing to consider the applicability of Listing 1.03 to the facts of Plaintiff's case. Under the Fourth Circuit's decision in Cook v. Heckler, 783 F.2d 1168 (4th Cir. 1986), when there is "ample evidence in the record to support a determination" that the claimant's impairment meets or equals one of the listed impairments, the ALJ must identify "the relevant listed impairments" and compare "each of the listed criteria to the evidence of [the claimant's]

---

[4] Plaintiff enumerates only two assignments of error in her brief, as she imbeds her contention regarding Dr. Mercier within her credibility argument.

symptoms." Id. at 1172, 1173; see also Radford v. Colvin, 734 F.3d 288 (4th Cir. 2013) (noting that "full explanation by the ALJ is particularly important" when "there is probative evidence strongly suggesting that [the claimant] meets or equals" a Listing). "Under Cook, the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments. Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment." Ketcher v. Apfel, 68 F. Supp. 2d 629 (D. Md. 1999); see also Russell v. Chater, 60 F.3d 824, 1995 WL 417576, at *3 (4th Cir. 1995) (unpublished disposition) ("Cook, however, does not establish an inflexible rule requiring an exhaustive point-by-point discussion in all cases."). Moreover, because Plaintiff bears the burden of evidentiary proof at step three, the task of supplying evidence that she meets a listing rests with her. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) ("Through the fourth step, the burden of production and proof is on the claimant.").

In this case, Plaintiff provided no evidence to support a determination that she met Listing 1.03. Listing 1.03, in its entirety, provides as follows:

> 1.03 Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R., Pt. 404, Subpt. P, Appx. 1, § 1.03. Section 1.00B2b(1) further specifies that

> [i]nability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective

7

> ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R., Pt. 404, Subpt. P, Appx. 1, § 1.00B2b(1). Section 1.00B2b(2) then goes on to provide "examples of ineffective ambulation," which

> include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F.R., Pt. 404, Subpt. P, Appx. 1, § 1.00B2b(2).

In the present case, Plaintiff's partial right knee replacement on January 17, 2012 arguably met the surgical requirement of Listing 1.03.[5] However, Plaintiff presented no evidence that a "return to ambulation did not occur, or is not expected to occur, within 12 months" of that surgery. In fact, at her post-operative appointment just six weeks after surgery, Plaintiff reported "doing very well" despite "some occasional pain in [her] right knee," and indicated that she was using a single cane for her *left* knee at that time. (Tr. at 20, 953.) At her hearing the following month, Plaintiff also employed a single cane, which she testified as using primarily for support and balance, rather than an inability to walk without it. (Tr. at 20, 41.) Accordingly, the record clearly lacked evidence, let alone "ample

---

[5] Plaintiff notes that she "has undergone 9 surgeries on her knees," three of which took place during her alleged disability period. (Pl.'s Br. [Doc. #16] at 10.) However, as Defendant correctly observes, only Plaintiff's partial replacement potentially qualifies as "reconstructive surgery" sufficient to meet Listing 1.03's requirement. (Def.'s Br. [Doc. #19] at 6.) Plaintiff does not present any evidence that her prior arthroscopic procedures would constitute reconstructive surgery or surgical arthrodesis (fusion). See Nance v. Colvin, No. CV 13-4633-DFM, 2014 WL 3347027 (C.D. Cal. July 8, 2014) ("Plaintiff has provided no proof that the arthroscopic surgeries on his knees involved reconstruction or surgical arthrodesis, as required by Listing 1.03. It appears from the record that Plaintiff's arthroscopic knee surgeries were minimally invasive."). Moreover, and in any event, there is no evidence of inability to ambulate effectively as discussed above.

8

evidence," to support a finding that Plaintiff was expected to require the use of hand-held assistive devices which limited the functioning of both her upper extremities for a period of at least twelve months following her January 2012 surgery. Therefore, the ALJ did not err in omitting a discussion of Listing 1.03 from his decision.

    B.    Dr. Mercier's Opinion

Plaintiff next claims that the ALJ failed to properly analyze the opinion of Dr. Mercier, her primary care physician, under 20 C.F.R. §§ 404.1527(c) and 416.927(c), better known as the "treating physician rule." The treating physician rule generally requires an ALJ to give controlling weight to the opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record," it is not entitled to controlling weight. See Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5; 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 416.927(c)(2)(i)-(c)(6) and § 404.1527(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the

9

Case 1:14-cv-00032-WO-JEP Document 20 Filed 07/17/15 Page 9 of 16

opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion.

When an ALJ does not give controlling weight to a treating source opinion, she must "give good reasons in [her] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see also SSR 96-2p (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").

Finally, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. §§ 404.1527(d) and 416.927(d).

In the present case, Dr. Mercier authored a letter to Plaintiff's attorney on February 15, 2011, indicating that he began treating Plaintiff "for blood pressure problems and severe breathing problems" in February 2010, a month after her alleged onset date. He noted that, "[a]s [Plaintiff's] office visits progressed[,] her medical problems revealed she had spinal stenosis and degenerative bone disease." Dr. Mercier subsequently referred Plaintiff to Pinehurst Surgical, where she underwent right knee surgery in June of 2010. (Tr. at 666.)

Dr. Mercier related that Plaintiff "continued to report that her back is causing her severe discomfort upon each office visit," and that "[t]his type of pain is making it difficult to sleep or stand for long periods of time." He further indicated that "Dr. James Skeen was consulted to help [Plaintiff] with back pain management and injections" and that Dr. David Strom was more recently consulted for "ongoing right foot pain." Dr. Mercier continued to see Plaintiff himself "for severe asthma, back pain, and knee issues." He opined that Plaintiff "is unable to work due to severe degenerative bone disease," noting that "[s]he has had many surgical procedures which have never really been successful or given her a positive result." (Tr. at 666.)

The ALJ explicitly "considered Dr. Mercier's opinions regarding [Plaintiff's] functional limitations and abilities to work." (Tr. at 22.) However, he correctly noted that Dr. Mercier's statement that Plaintiff "is unable to work" was not a medical opinion, but an administrative finding dispositive of an issue reserved to the Commissioner. (Tr. at 22) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). Because the social security regulations specifically instruct decision makers to give no "special significance" to such statements, 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3), the ALJ properly "granted minimal weight" to Dr. Mercier's conclusion (Tr. at 22).

Additionally, the ALJ found that Dr. Mercier's opinions were "not consistent with the longitudinal body of evidence," and specifically noted that Plaintiff's physical examinations, recounted earlier in the decision, did not support Dr. Mercier's conclusions. (Tr. at 22.) In fact, despite seeing Dr. Mercier at least twice a month in early 2010, Plaintiff only began reporting back pain on her seventh visit, some three months after her alleged

11

onset (Tr. at 638), and she did not report back soreness on all, or even most, of her subsequent visits (see Tr. at 639-665). Dr. Mercier's treatment notes also fail to reflect any objective findings supporting his opinion that Plaintiff suffers disabling back pain. In contrast, the ALJ's decision recounts ample findings suggesting that Plaintiff's back impairment was not as severe as either she or Dr. Mercier alleged:

> With regard to [Plaintiff's] back condition, radiographic reports reveal that she was diagnosed with degenerative disc disease of the lumbar spine and she testified to undergoing injections to help alleviate the pain. However, March 9, 2011 treatment records show that her low back pain did not involve radiculopathy and was effectively treated with prescription medication when taken as prescribed. In addition, a lumbar MRI taken on September 16, 2010 revealed facet arthropathy at L4-5 and L5-S1 but no evidence of stenosis. Treatment notes from Sandhills Neurology reveal that the claimant's course was stable, and she reported good tolerance without any side effects or complications and good compliance with treatment. Physical examinations of her back have shown a slightly reduced range of motion but nearly full strength findings and negative straight leg raise tests.

(Tr. at 20) (citations omitted).

Dr. Mercier's notes similarly reflect few findings regarding Plaintiff's knee impairment, other than to note occasional reports of pain and her treatment by other physicians. (Tr. at 641, 642, 644, 645, 665.) The ALJ's RFC findings nevertheless incorporate Dr. Mercier's opinion that Plaintiff's pain would prevent her from performing some work activities, such as standing for long periods. To this end, the ALJ limited Plaintiff to sedentary work in which she would only be required to "stand and walk for short distances or short time frames." (Tr. at 19.) Due to Plaintiff's back and knee impairments, the ALJ further provided that Plaintiff could never climb, could perform other postural activities no more than occasionally, could not lift or carry more than 10 pounds, and

12

required a stretch break at 30 minute intervals while seated. In short, substantial evidence supports that ALJ's treatment of Dr. Mercier's opinion.

C. Credibility

Finally, Plaintiff challenges the ALJ's finding that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not fully credible. Under the applicable regulations, the ALJ's decision must "contain specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7p; see also 20 C.F.R. §§ 404.1529, 416.929. Toward this end, the Fourth Circuit in Craig v. Chater provided a two-part test for evaluating a claimant's statements about symptoms. Craig, 76 F.3d at 594-95. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. §§ 416.929(b) & 404.1529(b)). If the ALJ determines that such an impairment exists, the second part of the test then requires the ALJ to consider all available evidence, including Plaintiff's statements about her pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 596.

Notably, while the ALJ must consider Plaintiff's statements and other subjective evidence at step two, he need not credit them "to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Id. This approach facilitates the ALJ's ultimate goal, which is to accurately

13

determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Thus, a plaintiff's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

> (i) [Plaintiff's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;
>
> (v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;
>
> (vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed her demeanor, the ALJ's credibility determination is entitled to deference.

In the present case, the ALJ determined at step one that Plaintiff's knee impairments "could reasonably be expected to cause [her] alleged symptoms," including pain. (Tr. at 20.) Plaintiff's case therefore hinges on the second part of the test, with respect to the ALJ's conclusion that ample objective evidence weighed against Plaintiff's allegations of disabling knee pain.[6] In particular, the ALJ noted that, although Plaintiff began a series of knee surgeries and injections in 1997, she continued to work until February 2009, and did not allege disability until January 1, 2010. (Tr. at 16, 20, 37, 225.) As mentioned above, Plaintiff also testified to using a cane primarily for balance and support, rather than an inability to walk without it. (Tr. at 20, 41.) She further acknowledged her ability to care for her daughter, cook, shop, drive, and care for her personal needs, and the ALJ found her activities "at least consistent with sedentary work." (Tr. at 23, 41-43.) In terms of objective evidence relating to Plaintiff's alleged knee pain, the ALJ found that, although Plaintiff's physical exams revealed a limited range of motion and arthritis, they also noted normal strength in her knees, with equal strength in her upper and lower extremities. (Tr. at 20, 41, 469, 603, 606, 733, 752, 758, 762, 771, 803, 914, 923, 949.) The ALJ also emphasized that Plaintiff's "routine x-rays have been essentially unremarkable, consisting of no deformities or misalignments, no evidence of significant degenerative changes and an acceptable patellar alignment." (Tr. at 20, 738, 743, 775-76, 891, 924, 949.)

---

[6] The ALJ's decision addresses Plaintiff's credibility as to all of her impairments. (Tr. at 20-21.) However, Plaintiff only appears to challenge the validity of the ALJ's credibility determination regarding her knee impairment. (Pl.'s Br. at 11-12.)

Plaintiff contends that the ALJ mischaracterized the medical evidence, and that, "even at points where her X-rays were normal, her MRI's were abnormal." (Pl.'s Br. at 11.) However, the records she cites fail to support her argument. (See Tr. at 679, 686, 701, 703, 738, 740.) Moreover, although the records show that Plaintiff's knees later worsened to the point that, by September 15, 2011, her right knee was "almost bone-on-bone laterally," she underwent a knee replacement just four months later, after which Plaintiff acknowledges that her right knee x-ray was clean. (Pl.'s Br. at 11 (citing Tr. at 923, 1011).) In fact, after her surgery, Plaintiff reported that she was doing very well, and her most recent knee examination was unremarkable with full strength findings. (Tr. at 20, 953.) The above findings constitute substantial evidence that Plaintiff's knee impairment did not render her totally disabled during the time period at issue as she alleges or limit her beyond the limited range of sedentary work determined by the ALJ in this case. Accordingly, the Court finds no error in the ALJ's credibility determination.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #15] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #18] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 17th day of July, 2015.

/s/ Joi Elizabeth Peake
United States Magistrate Judge
